**Modified and Affirmed and Opinion Filed July 2, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01372-CR**

**No. 05-19-01373-CR**

**DONTE DARNELL EASTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F18-75377-P and F18-75380-P**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Myers

Donte Darnell Easter was twice convicted by a jury of aggravated assault with a deadly weapon. The trial court found the two enhancement paragraphs in each case to be true and assessed concurrent thirty-five-year sentences. In seven issues, appellant challenges the sufficiency of the evidence, the trial court's denial of motions for continuance and motions to suppress, and argues he was entitled to a lesser-included offense instruction in the charge. The State brings a cross-point asking us to modify the judgment to correct clerical errors. As modified, we affirm.

## DISCUSSION

### Issue One: Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to support the convictions for aggravated assault with a deadly weapon. The State argues there is sufficient evidence to prove beyond a reasonable doubt he committed aggravated assault with a deadly weapon, as charged in these cases.

When determining whether the evidence is sufficient to support a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a factfinder could have found the essential elements of the charged offense were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). The factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319). We presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the factfinder's evaluation of the credibility and weight of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). This standard is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Both indictments alleged that on or about March 18, 2018, in Dallas County, Texas, appellant intentionally, knowingly, and recklessly caused body injury to Jose Bustamante (05-19-01372-CR) and Aida Gonzalez Ibarra (05-19-01373-CR) by striking them with a motor vehicle, and that appellant used and exhibited a deadly weapon, a motor vehicle, during the commission of the assaults. The penal code provides that a person commits aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the assault. *See* TEX. PENAL CODE §§ 22.01(a)(1), 22.02(a)(2). A "deadly weapon" is statutorily defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17). An automobile is not a statutory deadly weapon per se, but the trier of fact can find it was a deadly weapon if it was used in a manner that was capable of causing death or serious bodily injury. *See id*.; *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019); *Melton v. State*, No. 05-20-00543-CR, 2021 WL 1884653, at *2 (Tex. App.—Dallas, May 11, 2021, no pet.) (mem. op., not designated for publication).

The evidence at trial showed that on the morning of March 15, 2018, nineteen-year-old Jose Bustamante was riding his 2003 Honda Spirit motorcycle to his mother's house in the Oak Cliff area of Dallas, Texas. When the motorcycle lost power before he reached his mother's house, Bustamante dragged it to a nearby gas

–3–

station and called his mother, Aida Gonzalez Ibarra (Gonzalez), for assistance. Bustamante could not afford to hire a tow truck to tow the bike to his mother's house, and his mother agreed to tow the motorcycle behind her minivan using a rope.

Gonzalez and Bustamante activated their blinker lights, and she towed the bike to her house, which was only a few miles away. Other cars drove around them as they proceeded at about ten miles per hour, but when they were about halfway to his mother's house Bustamante—still on the bike as it was being towed—noticed a "white truck" behind him. Unlike the other drivers, it disregarded Bustamante's frantic gestures to "go by" and approached "closer and closer."

Fearing the vehicle was about to hit him, Bustamante stood up on the pegs of his motorcycle—in case he had to "jump off." And just as he did that, the vehicle struck him and knocked him off the bike. Bustamante felt his leg "go numb" and felt pain in his hand as the collision forced him into the back of his mother's van.[1] He was thrown under his mother's car and his body was pinned by the motorcycle and the white vehicle. He said about eight seconds passed before the white vehicle backed up and hit him again. Bustamante thought the driver was trying to kill him. The vehicle reversed yet again, but by this point Gonzalez had gotten out of her van and stood between the two vehicles to "try to get him to stop."

Bustamante soon noticed another woman standing by his mother. This was

---

[1] Bustamante sometimes referred to his mother's van as a "truck."

—4—

Audi Babers, who testified that she had been driving by in the opposite direction and saw a white Tahoe or Suburban, either a sports utility vehicle (SUV) or "big truck," "trying to go around other cars." She testified that because of oncoming traffic the white SUV or truck "couldn't go around," and she saw it "run over somebody." She stopped her car and opened her car door to alert Gonzalez that Bustamante was being pushed under the van by the white vehicle. Baber got out of her car and approached Gonzalez as the driver of the white vehicle was backing up. The driver tried to make a U-turn in the street and hit Gonzalez with his vehicle before driving off. Babers pushed Gonzalez out of the street. She testified that she did not see a second collision between the white vehicle and the van. Babers went to the hospital out of concern for Bustamante, where she spoke to police.

Bustamante and Babers provided a description of the driver of the white vehicle. Bustamante described him as an African American male with a beard. He memorized the vehicle's license plate number and provided it to police. Babers described the driver as a Black male with a beard and a tattoo or some sort of dark mark on his face. She remembered saying to him, "You ran him over," to which the driver replied, "I don't give a f**k," before driving away. Babers identified appellant in a photo lineup at the police station as the driver of the vehicle that struck Bustamante and Gonzalez.[2] Gonzalez described the driver's race as dark-skinned,

---

[2] Babers initially marked "Not sure" on appellant's photograph when viewing the photographs in the lineup, but she positively identified him upon a second viewing.

and she testified that the suspect vehicle was a white Yukon or Tahoe. She recalled that the driver laughed before driving away.

Both Bustamante and Gonzalez were injured during the assault. Bustamante lost a finger and had "a very, very large wound" on his right leg that nearly caused his leg to be amputated. It required muscle and bone grafts from other parts of his body to treat and resulted in a loss of function in his leg. Bustamante testified that he had undergone seven surgeries, had been out of work and school for about five months, and needed additional surgery.[3] Gonzalez testified that the impact injured her leg, broke the skin, and caused her to suffer pain. She remained at the scene and spoke to police as her son was taken to the hospital. She saw her son at the hospital later that evening.

Dallas Police Department detective David Michael Hernandez spoke to Bustamante at the hospital. Although Bustamante "was in a great amount of pain," he was able to describe the suspect and the suspect's vehicle and he provided the vehicle's license plate number as well as an account of the offense. A license plate search showed the vehicle was a white 2001 GMC Yukon that was registered to appellant. Hernandez ran appellant's name through a police database and found a

---

Babers had a criminal record and was incarcerated on a probation violation at the time of trial. She testified that she was wanted on a felony warrant at the time of the incident, and that she was nervous about going to the police station to view the lineup but she "didn't care about my freedom" at that moment because Bustamante "was somebody's son" and she thought it "was the right thing to."

[3] Bustamante explained that he was supposed to have a follow-up surgery, but he had not been able to schedule it because of his financial situation.

–6–

name matching the registered vehicle owner's name, and he testified that appellant's photograph "matched the description given to me by [Bustamante]."

Police officers arrested appellant the following day, March 16, 2018, as he was driving the white 2001 GMC Yukon. The vehicle was towed to the Dallas City Auto Pound, and Hernandez went to the auto pound and took photographs of the outside of the vehicle. These photographs showed "fresh damage to the front end," no front license plate, and a paper license plate on the rear end that did not correspond with the vehicle's registration record.

Detective Hernandez testified that he read appellant his Miranda rights prior to interviewing him. During this interview, which was recorded and admitted into evidence, appellant claimed the vehicle had been stolen. Appellant told the detective he tracked the vehicle down using the "Lojack" on the vehicle, and that he fought the person who had taken it and engaged in a physical altercation with that person. Appellant also claimed the perpetrator took the vehicle's radio and speakers, but one of the photographs taken by Hernandez shows a radio in the very rear of the vehicle that looks as though it had been removed from a vehicle console.

Appellant argues the State did not present sufficient evidence to show he was guilty of the offenses of aggravated assault with a deadly weapon. He points out that Babers recalled an eye tattoo on the face of the suspect, and that the photo lineup she looked at had six photographs, but only two had any sort of facial markings and only one had eye tattoos. However, Babers also testified that the suspect was a Black

–7–

male with a beard. She recalled a tattoo or some sort of facing marking, but her testimony on this point was far from certain. She initially testified that the suspect "had a tattoo on his face," but a few moments later described it as a "dark mark." Even so, she distinctly remembered the beard. And, in any event, her testimony was not the only evidence showing appellant was the driver of the white vehicle. Bustamante, too, recalled that the driver of the vehicle was an African American male with a beard. Additionally, although appellant voluntarily absented himself from the trial, he was present during jury selection, and jurors had an opportunity to observe him. The State introduced photographs of appellant during guilt-innocence, and these photographs show appellant to be an African American male with a beard and some sort of dark marking under one eye. Moreover, Bustamante memorized the suspect vehicle's license plate number and provided it to police. That vehicle was registered to appellant, and he was driving it when he was arrested. Given the evidence presented by the State, the jury could reasonably determine appellant was the driver of the white vehicle.

Appellant also claims the State did not prove the conduct here was purposeful. He points out that Gonzalez and Bustamante were traveling on the inside lane of a four-lane road, with cars parked on the outside lanes; Bustamante did not have a red warning flag on his motorcycle; and one of the police officer witnesses agreed it was dangerous to tow a motorcycle behind a vehicle. Appellant argues the entire incident was an accident in which appellant's vehicle "could not pass the motorcycle, even

–8–

though [Bustamante] was waving him to pass them, because there was too much traffic and no opportunity to go around the very slow[-]moving minivan and motorcycle."

But the decision to tow the motorcycle behind the minivan has no bearing on appellant's conduct. And the evidence shows that while other vehicles were able to maneuver around the van and motorcycle, appellant ignored Bustamante's frantic gestures and advanced toward them and struck Bustamante, pushing his motorcycle into his mother's van. He also struck Gonzalez with his vehicle as she tried to protect her son. In addition, Bustamante and Gonzalez testified that appellant reversed his vehicle and struck Bustamante again after he was already on the ground. It is true that Babers testified, as appellant argues, that it looked to her as though appellant could not pass because of the traffic, and she did not see a second impact with the van. However, she also testified that she said to the driver of the white vehicle, "You ran him over," and that the driver replied, "I don't give a f**k," before driving away. There is sufficient evidence in this record for the jury to reasonably determine appellant acted intentionally or knowingly.

We similarly reject appellant's suggestion that Bustamante had an interest in describing the incident as an aggravated assault because he was engaged in a civil lawsuit against appellant, and that he stood to gain financially. Appellant cites no evidence to support such a claim; and, in any event, we are not free to substitute our judgment for weight and credibility determinations made by the jury.

–9–

Given the evidence in this record, we conclude there was sufficient evidence for the jury to convict appellant of aggravated assault as charged in the indictments. We overrule appellant's first issue.

**Issues Two, Three, and Seven:  Continuances**

In his second, third, and seventh issues, appellant argues the trial court erred in denying his motions for continuance that were based on his absence from the proceedings and alleged missing evidence.  The second and third issues concern, respectively, a continuance requested by defense counsel because of appellant's absence from the proceedings, and to obtain evidence of a 911 call.  Appellant's seventh issue concerns a continuance based on his absence from the punishment hearing.

The record shows appellant was present for jury selection on April 8, 2019, but he did not appear for the start of trial the following day.  Prior to the start of trial, defense counsel objected to proceeding without appellant being present.  The trial court overruled the objection and explained that it would "proceed, per the Code, without [appellant] because he voluntarily absented himself from the proceedings." Defense counsel then presented an oral motion for continuance asking the trial court to continue the proceedings until appellant "shows up."  The trial court denied this motion.

Defense counsel also orally requested a continuance that concerned alleged missing body camera footage associated with the offense, and the recording of a 911

–10–

call from the incident. Counsel first presented this motion to the magistrate judge that presided over voir dire. As support, defense counsel offered, and the court admitted, defense exhibit 1. This was an offense report from Detective Hernandez that included, under "Evidence & Seizures," notations that a "911 Audio and Call Sheet" and "Body Worn Camera" were in the "detective's case file." After listening to arguments, the magistrate judge denied the motion and announced that "we will go forward and pick the jury."

The following morning, prior to the start of trial, defense counsel again orally requested a continuance based on the alleged missing evidence. He told the trial court that a notation in the detective's file referred to "a body cam of the scene." During the discussion that followed, the State explained it had "made diligent efforts to ascertain" the existence of the items and had been informed "there is no body cam available," and that the State was not sure the 911 call was retained. The State also explained that Detective Hernandez did not "have either of those items in his care, custody[,] or control." The discussion further revealed that a civil attorney for the "complaining witness"[4] made a public records request for the body camera video in May of 2018, but that neither the complaining witness nor the attorney had the video. The State reiterated that neither the Dallas County District Attorney's Office nor the Dallas Police Department had the evidence at issue. The trial court stated that while

---

[4] There are two complaining witnesses in these cases, Bustamante and Gonzalez, but it is not clear which one the attorneys were referring to.

the evidence existed at one time, "it is not available at this date, and we don't have any indication that it will become available." The court denied the motion for continuance, stating that if the evidence "does not exist, there's no need to wait, to prolong this, to see if it will ever appear."

Defense counsel also orally requested a continuance on May 23, 2019, prior to the start of the punishment hearing. Defense counsel cited appellant's continued absence from the proceedings and announced he was not ready to proceed. The trial court denied this motion.

All three of the motions for continuance at issue here were oral. But the code of criminal procedure provides for a continuance in a criminal action only upon the filing of a sworn, written motion setting forth sufficient cause. TEX. CODE CRIM. PROC. arts. 29.03, 29.08. "A motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); *see also Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Thursby v. State*, No. 05-19-00929-CR, 2020 WL 3566647, at *2 (Tex. App.—Dallas July 1, 2020, no pet.) (mem. op., not designated for publication). "[N]o 'due process exception' exists to the written-and-sworn requirement." *Blackshear*, 385 S.W.3d at 591; *see also Willis v. State*, No. 05-19-00513-CR, 2020 WL 2537252, at *2 (Tex. App.—Dallas May 19, 2020, pet. ref'd) (mem. op., not designated for publication).

Because the motions for continuance at issue here were oral and unsworn,

–12–

they present nothing for appellate review, and we overrule appellant's second, third, and seventh issues.

## Issues Four and Five:  Motions to Suppress

In his fourth and fifth issues, appellant claims the trial court erred in denying his motion to suppress photographs of his vehicle at the auto impound (issue four), and his motion to suppress his statement to Detective Hernandez (issue five).

A trial court's denial of a motion to suppress is reviewed under a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We afford almost complete deference to the trial court's determination of historical facts "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).  However, we conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations.  *Brodnex*, 485 S.W.3d at 436.  If the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings and will assume it made implicit findings that are supported by the record. *Id.*  We will sustain the trial court's decision if we conclude the decision is correct under any applicable theory of law.  *Id.*

When a defendant asserts that a search and seizure violates the Fourth Amendment, he bears the initial burden of producing evidence to rebut the presumption of proper conduct by law enforcement.  *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011).  A defendant can satisfy this burden by showing

that the search and seizure was without a warrant. *Id*. The burden then shifts to the State to establish that the search or seizure was nevertheless reasonable under a totality of the circumstances. *Id*.

It is undisputed that there was no search warrant here. Although warrantless searches are considered per se unreasonable, a warrantless vehicle search is reasonable if an officer has probable cause to believe the vehicle contains evidence of a crime. *See Chambers v. Maroney*, 399 U.S. 42, 48–49 (1970); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *Liffick v. State*, 167 S.W.3d 518, 520 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer would lead persons of reasonable prudence to believe an instrumentality of a crime or evidence pertaining to a crime will be found. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

Beginning with the photographs of appellant's vehicle, appellant argues the towing of his vehicle to the auto impound was, in effect, a seizure without a warrant, and that the photographs subsequently taken of the outside of the vehicle were inadmissible because they were the result of an illegal search.

According to Detective Hernandez's testimony from the suppression hearing, appellant was arrested pursuant to an arrest warrant. He exited his home, got in his vehicle, and started driving—at which point he was arrested. Detective Hernandez testified that he advised the arresting officers to tow the vehicle because it "was used

–14–

as a weapon in that offense." He explained that the officers did not go to the house and take the car; they seized the vehicle, the instrumentality of the offense, when appellant was driving it. Appellant admitted during his interview that he was driving the vehicle at the time of his arrest. Towing appellant's vehicle after his arrest and subsequently photographing the vehicle was reasonable under the circumstances because officers had probable cause to believe the vehicle contained evidence of a crime. *See Chambers*, 399 U.S. at 48–49; *Wiede*, 214 S.W.3d at 24. More precisely, Detective Hernandez had probable cause to believe the vehicle was the weapon used in these offenses. Witnesses described the suspect vehicle as a white truck or SUV, and the license plate number Bustamante provided was registered to appellant. Photographing the outside of the vehicle without a warrant did not violate appellant's expectation of privacy. *See Wiede*, 214 S.W.3d at 24 ("'[L]ess rigorous warrant requirements govern [vehicles] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.'") (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976)). Furthermore, "[T]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484 (1985). Also, the State did not need to show exigent circumstances to justify a warrantless search of appellant's vehicle. *See id.* ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a

warrantless search."); *see also State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) (quoting *Johns*).

Turning to appellant's statements to the police, the record likewise supports the trial court's denial of appellant's motion to suppress his statement to Detective Hernandez. The trial court held a separate hearing regarding this motion to suppress. Detective Hernandez testified that after appellant was taken into custody, he conducted a Mirandized interview with him. He testified that appellant did not admit to the offenses during this recorded interview. Defense counsel conceded at the hearing that "Miranda was done," but he argued appellant's statements to the detective did not meet a hearsay exception and, more specifically, that the statement was not a statement against interest. The State argued appellant's statement was "a statement of party law, which is admissible as the hearsay exception." After further discussion, the trial court established that "Miranda was given[,] and everybody agreed that Miranda was followed"; that appellant made some statements to the detective "after the Miranda warning was given"; and that defense counsel was arguing that statements made after appellant was Mirandized were hearsay. The State responded that the statements in question were admissible as statements by a party-opponent and that the Miranda warning was successfully administered. The trial court concluded appellant's statements were admissible.

Appellant challenged the admissibility of his statements in his interview with Detective Hernandez based on hearsay, a rule of evidentiary admissibility.

"Hearsay" is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). Hearsay statements are not admissible except as provided by "a statute," the rules of evidence, or by "other rules prescribed under statutory authority." TEX. R. EVID. 802. But a statement is not hearsay if it is offered against a party and is the party's own statement. *See* TEX. R. EVID. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) ("Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). "The logic behind qualifying a party's own statements as not hearsay and as admissible is 'that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements.'" *Jackson v. State*, No. 05-13-00004-CR, 2014 WL 2611106, at *2 (Tex. App.—Dallas June 11, 2014, no pet.) (mem. op., not designated for publication) (quoting *Trevino*, 991 S.W.2d at 853). "In addition, party admissions— unlike statements against interest—need not be against the interest of the party to be admissible but need only to be offered as evidence against the party." *Id.* (citing *Trevino*, 991 S.W.3d at 853).

As the trial court implicitly recognized, appellant was the State's opponent; thus, his statements in the interview fell within the exception for statements of a party opponent and were admissible at trial. We overrule appellant's fourth and fifth issues.

## Issue Six:  Jury Charge Error

In his sixth issue, appellant argues the trial court erred in denying appellant's requested jury instruction on the lesser-included offense of deadly conduct.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  When reviewing a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.  *Id*.  If error occurred, whether it was preserved determines the degree of harm required for reversal.  *Id*. If, as in these cases, the appellant objected to the complained-of error in the jury charge, he will obtain relief if the record shows he suffered "some harm."  *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).   "This less-stringent standard still requires the reviewing court to find that the defendant 'suffered some actual, rather than merely theoretical, harm from the error.'"  *Reeves*, 420 S.W.3d at 816 (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)).

We use a two-step analysis to determine if a defendant is entitled to a lesser-included offense instruction.  *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993).  We first determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law.  *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).  Under this first step, we ask whether the lesser-included offense is included within the proof

necessary to establish the offense charged. *Id*.; *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). Second, there must be some evidence from which a rational jury could find that, if the defendant is guilty, he is guilty of only the lesser-included offense. *Bullock*, 509 S.W.3d at 925; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). "That requirement is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson v. State*, 568 S.W.3d 667, 671 (Tex. Crim. App. 2018) (citing *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992)). "The evidence raising the lesser offense must be affirmatively in the record." *Id*. In other words, "a defendant is not entitled to a lesser-included offense instruction based on the absence of evidence, and the evidence must be 'directly germane to the lesser-included offense. . . .'" *Id*. (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). We consider all the evidence admitted at trial, not just the evidence presented by the defendant, and if there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense, the defendant is entitled to a lesser-charge instruction. *Id*. (citing *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "It does not matter whether the evidence is controverted or even credible." *Id*. (citing *Banda v. State*, 890 S.W.2d

–19–

42, 60 (Tex. Crim. App. 1994)). If the jury is charged based on alternate theories, "the second prong of the lesser-offense test is met 'only if there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater.'" *Id*. (citing *Arevalo v. State*, 970 S.W.2d 547, 548 (Tex. Crim. App. 1998)).

Regarding the first step, the State acknowledges that deadly conduct is a lesser-included offense of aggravated assault as charged here. *See, e.g., Safian v. State*, 543 S.W.3d 216, 222 (Tex. Crim. App. 2018); *Guzman*, 188 S.W.3d at 190–92; *Pogue v. State*, No. 05-12-00883-CR, 2013 WL 6212156, at *3 (Tex. App.—Dallas Nov. 27, 2013, no pet.) (mem. op., not designated for publication).

Turning, therefore, to the second step, we find no evidence in this record that would permit a rational jury to find appellant guilty of only the lesser-included offense and not the charged offense. The elements of deadly conduct are as follows: "A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." *See* TEX. PENAL CODE § 22.05(a). For appellant to be entitled to an instruction on deadly conduct, the record would have to contain some evidence that would allow a jury to find he recklessly engaged in conduct that placed the complainants in imminent danger of serious bodily injury without finding appellant intentionally, knowingly, or recklessly caused bodily injury to the complainants while using or exhibiting a deadly weapon. *See id.* §§ 22.01(a)(1), 22.02(a)(2), 22.05(a); *Pogue*, 2013 WL 6212156, at *3. The record

–20–

contains no such evidence. And given the facts of these cases, the only means by which appellant could have placed the complainants in imminent danger of serious bodily injury was through the use of the motor vehicle as a deadly weapon. *See Pogue*, 2013 WL 6212156, at *3.

Appellant did not testify at trial or otherwise offer evidence that, if guilty, he was guilty of only deadly conduct, and his brief does not direct us to any evidence suggesting he was guilty only of deadly conduct and not aggravated assault. But even if the facts support that appellant's conduct while driving was "reckless," this does not preclude a finding that he intentionally, knowingly, or recklessly caused bodily injury to Bustamante and Gonzalez by striking them with his vehicle. "Recklessness" is a culpable mental state for both deadly conduct and aggravated assault. *See* TEX. PENAL CODE §§ 22.01(a)(1), 22.02(a)(2), 22.05(a). In other words, because aggravated assault and deadly conduct share the culpable mental state of recklessness, evidence that appellant was driving recklessly is applicable to both offenses and, thus, does not support the commission of one offense while excluding the other. *See, e.g., Guzman*, 188 S.W.3d at 190–92. Moreover, the undisputed evidence shows appellant's conduct resulted in bodily injury to Bustamante and Gonzalez. The evidence, therefore, establishes the elements of aggravated assault with a deadly weapon as charged in these cases. "It follows, then, that there is no evidence in this record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of deadly conduct and not aggravated assault." *Pogue*, 2013

–21–

WL 6212156, at *4; *see also Guzman*, 188 S.W.3d at 194 (appellant convicted of attempted murder not entitled to instruction on deadly conduct when he admitted he had a reckless state of mind and his conduct resulted in serious bodily injury; his testimony established the offense of aggravated assault, and a jury could not rationally find him guilty *only* of deadly conduct and not aggravated assault).

Because the facts of these cases do not support a finding that if appellant is guilty, he is guilty *only* of deadly conduct and not aggravated assault, appellant was not entitled to an instruction on the lesser-included offense of deadly conduct. Accordingly, the trial court did not err in refusing to submit an instruction on deadly conduct, and we overrule appellant's sixth issue.

## State's Cross-Point

In a cross-point, the State asks us to modify both judgments to reflect that appellant pleaded not true to the two enhancement paragraphs in each case, and that the trial court found the enhancements to be true. The indictment in each case contains two enhancement paragraphs alleging prior felony convictions for burglary of a habitation and robbery. During the punishment hearing, appellant's counsel entered a plea of not true to these enhancement paragraphs on appellant's behalf. The State presented evidence supporting the enhancement paragraphs, and the trial court stated that it found the enhancement paragraphs true. The judgments, however, incorrectly include the notation "N/A" in the sections for appellant's plea to the first

and second enhancement paragraphs and the trial court's findings on the two enhancement paragraphs.

When the record provides the necessary information to correct inaccuracies in the trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain the State's cross-point and modify the judgment in each case to reflect that appellant pleaded not true to the first and second enhancement paragraphs, and that the trial court found the enhancement paragraphs to be true.

As modified, we affirm the trial court's judgments.

/Lana Myers//
LANA MYERS
JUSTICE

191372f.u05
191373f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

–23–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DONTE DARNELL EASTER,
Appellant

No. 05-19-01372-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F18-75377-P.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under "1st Enhancement Paragraph" and "2nd Enhancement Paragraph," "N/A" is changed to "NOT TRUE."

Under "Findings on 1st Enhancement Paragraph" and "Findings on 2nd Enhancement Paragraph," "N/A" is changed to "TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 2nd day of July, 2021.



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DONTE DARNELL EASTER,
Appellant

No. 05-19-01373-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F18-75380-P.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

Under "1st Enhancement Paragraph" and "2nd Enhancement
Paragraph," "N/A" is changed to "NOT TRUE."

Under "Findings on 1st Enhancement Paragraph" and "Findings on 2nd
Enhancement Paragraph," "N/A" is changed to "TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 2nd day of July, 2021.